```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
C.D., an infant, by his mother and
natural guardian, JOAN MEDINA, and
JORDAN MEDINA,

                    PlaintiffS,
                                                    **MEMORANDUM AND ORDER**
     -against-

CITY OF NEW YORK, P.O. BENITA BUNCH,                13-CV-6287 (KAM)(MDG)
Shield No. 3222 individually and
officially, P.O. SHUYAN LAM Shield No.
7814, individually and officially,

                    Defendants.

----------------------------------------X
```
**MATSUMOTO, United States District Judge:**

Plaintiffs Jordan Medina and C.D., by his mother and natural guardian Joan Medina, (collectively, "plaintiffs") bring this action pursuant to 42 U.S.C. § 1983 and New York state law against the City of New York, Police Officer Benita Bunch ("Officer Bunch"), and Police Officer Shuyan Lam ("Officer Lam")(collectively, "defendants") in connection with plaintiffs' arrest on September 30, 2013 in the Borough Park neighborhood of Brooklyn, New York. (First Am. Compl., ECF No. 12.) Plaintiffs have withdrawn their claims for excessive force and municipal liability. (*See* Letter from J. Massimi dated March 12, 2015, ECF No. 34; Stipulation of Dismissal of *Monell* Claim dated Dec. 17, 2015, ECF No. 53.) The remaining claims are false arrest and false imprisonment pursuant to 42 U.S.C. § 1983, and state

1

law claims for assault and battery premised upon the handcuffing and physical contact incidental to plaintiffs' arrests. Presently before the court is a motion by defendants for summary judgment pursuant to Federal Rule of Civil Procedure 56. (*See* Notice of Mot., ECF No. 42.) The court heard oral argument on defendants' motion on December 10, 2015. For the reasons set forth below, defendants' motion for summary judgment is granted in its entirety.

**BACKGROUND**

The following facts, taken from the parties' Rule 56.1 statements and the deposition testimony cited and annexed to the parties' motion papers, are undisputed unless otherwise noted. The court has considered whether the parties have proffered admissible evidence in support of their positions and has viewed the facts in the light most favorable to the nonmoving plaintiffs. *See Spiegel v. Schulmann*, 604 F.3d 72, 77, 81 (2d Cir. 2010).

On September 30, 2013, Mr. Medina and his nephew, C.D., were returning home from a birthday party for the sister of C.D.'s girlfriend. (Pls.' Resp. to Defs.' Stmt. of Undisputed Facts and Additional Material Facts ("Pls.' 56.1 Stmt.") ¶ 16, ECF No. 48; Defs.' Reply to Pls.' Stmt. of Additional Material Facts ("Defs.' 56.1 Reply Stmt.") ¶ 16, ECF No. 50.) Mr. Medina and C.D. took a bus to 39th Street and 12th

Avenue in Brooklyn, New York, and began walking toward Mr. Medina's mother's house located at 54th Street and Fort Hamilton Parkway.  (Pls.' 56.1 Stmt. ¶ 17; Defs.' 56.1 Stmt. ¶ 17.)

On September 30, 2013, for approximately fifteen minutes, Mr. Saul Steinmetz observed two male individuals in the vicinity of New Utrecht Avenue and 48th Street, near a vehicle that he later saw them enter.  (Joint Dep. Tr. App'x ("Joint App'x") Ex. 5 (Steinmetz Dep.) at 14:7-14, 23:17-21.)  During that time, Mr. Steinmetz observed the two individuals walk down the block away from the vehicle whenever a passerby would approach, but noted that the two individuals would walk back to the same vehicle.  (*Id*. at 15:20-16:3.)  Mr. Steinmetz then observed the two individuals enter the vehicle when no one else was nearby.  (*Id*.)  Mr. Steinmetz is a member of Shomrim, a neighborhood watch group, and he alerted other members of Shomrim of the suspicious activity via two-way radio.  (*Id*. at 14:15-18.)  Shomrim patrol members have identification badges issued by the New York Police Department and occasionally attend roll call at the 66th Precinct.  (Pls.' 56.1 Stmt. ¶ 34; Defs.' 56.1 Stmt. ¶ 34.)  Other members of Shomrim arrived at the vicinity of New Utrecht Avenue and 48th Street a few minutes later and continued observing the two individuals while Mr. Steinmetz went inside his house.  (Joint App'x Exh. 5 at 15:8-16; 25:20-22.)

3

Within one or two minutes after receiving Mr. Steinmetz's radio call, Mr. Abraham Rosenberg, a Shomrim member, arrived at 11th Avenue and 48th Street, a block away from New Utrecht Avenue and 48th Street. (Joint App'x Exh. 9 at 27:18-25.) Mr. Rosenberg saw two individuals and confirmed with Mr. Steinmetz that they were the individuals Mr. Steinmetz had observed. (*Id.*) Thereafter, Mr. Rosenberg continuously kept the two individuals within his sight and followed them on foot for approximately five blocks to Fort Hamilton Parkway and 52nd Street. (*Id.*) The two individuals remained in Mr. Rosenberg's view the entire time, and along the way, he observed the two individuals pulling the door handles of three to five cars as if to determine if they were unlocked. (*Id.* at 33:21-34:7.)

Defendants Police Officer Benita Bunch and Police Officer Shuyan Lam were assigned to patrol areas of the 66th Precinct, located in the Borough Park neighborhood of Brooklyn, New York, on September 30, 2013. (Defs.' Stmt. of Undisputed Facts ("Defs.' 56.1 Stmt") ¶ ¶ 1-2, ECF No. 44; Pls.' 56.1 Stmt. ¶¶ 1-2). Officers Bunch and Lam were in uniform and patrolling an area with a high rate of automobile robberies in a marked police vehicle. (Defs.' 56.1 Stmt. ¶ 3; Pls.' 56.1 Stmt. ¶ 3.)

At approximately 1:00 a.m. on September 30, 2013, a Shomrim member waved his hand out of the window of his car to gain the attention of Officers Bunch and Lam in the vicinity of

Fort Hamilton Parkway and 51st Street. (Defs.' 56.1 Stmt. ¶¶ 4-5; Pls.' 56.1 Stmt. ¶¶ 4-5; Joint Dep. Tr. App'x ("Joint App'x") Exh. 1 (Bunch Dep.) at 50:19-22, ECF No. 43.) Thereafter, Officers Bunch and Lam rolled down their car windows and the Shomrim member told the officers that "some guys are breaking into cars" and that other members of Shomrim were following the suspects. (Defs.' 56.1 Stmt. ¶¶ 6-7; Pls.' 56.1 Stmt. ¶¶ 6-7.) The Shomrim member who initially flagged down Officers Bunch and Lam directed them "down the block" to the vicinity of Fort Hamilton Parkway and 52nd or 53rd Street. (Defs.' 56.1 Stmt. ¶ 8; *see also* Joint App'x Exh. 1 at 60:2-18.[1])

Officers Bunch and Lam drove to the vicinity of Fort Hamilton Parkway and 52nd or 53rd Street, where they observed the plaintiffs and other members of the Shomrim. (Defs.' 56.1 Stmt. ¶¶ 10-11; Pls.' 56.1 Stmt. ¶¶ 10-11.) The Shomrim member who initially flagged down Officers Bunch and Lam also drove to the vicinity of Fort Hamilton Parkway and 52nd or 53rd Street, where the plaintiffs were located. (Defs.' 56.1 Stmt. ¶ 9; Pls.' 56.1 Stmt. ¶ 9.) Members of Shomrim pointed to the plaintiffs as the persons they had observed, and Officers Bunch

---

[1] Plaintiffs dispute that the Shomrim member who initially flagged down Officers Bunch and Lam verbally directed the officers down the block to the location where plaintiffs were stopped, but instead contend that the officers followed the Shomrim member to plaintiffs without any verbal directions. (Pls.' 56.1 Stmt. ¶¶ 8, 10.) The court, however, finds that plaintiff's contention that the Shomrim member did not give any verbal directions to where the plaintiffs were located is not supported by the evidence in the record. In any event, this fact is not material to the court's resolution of the issues in this case.

5

and Lam exited their vehicle and stopped the plaintiffs, who were the only individuals walking on Fort Hamilton Parkway toward 53rd Street. (Defs.' 56.1 Stmt. ¶ 10; Pls.' 56.1 Stmt. ¶ 10; Joint App'x Exh. 2 (Lam Dep.) at 55, 64.)

Officers Bunch and Lam then spoke to one or two members of the Shomrim who identified the plaintiffs as the individuals who were breaking into cars and "checking out" cars. (Defs.' 56.1 Stmt. ¶ 12; Pls.' 56.1 Stmt. ¶ 12.) One of the Shomrim members told the officers that the vehicle that plaintiffs were observed entering belonged to his cousin. (Joint App'x Exh. 2 at 59:5-7.) Officers Bunch and Lam also questioned Mr. Rosenberg about the situation, and Mr. Rosenberg told the officers that he observed the plaintiffs pull the door handles of several cars to see if they were open. (Joint App'x Exh. 9 at 36:12-14, 38:22-39:4.) Viewing the facts in the light most favorable to the plaintiffs, some of the Shomrim members stated that the plaintiffs were the individuals suspected of breaking into cars and others stated that the plaintiffs were misidentified.[2] (Pls.' 56.1 Stmt. ¶ 20; Defs. 56.1 Reply Stmt. ¶

---

[2] Defendants argue that plaintiffs' testimony that Shomrim members disagreed about whether plaintiffs were the individuals that Mr. Steinmetz observed breaking into cars is inadmissible hearsay. Defendants' argument is unavailing, because the statements of the Shomrim members are not being offered for the truth of the matter (that plaintiffs were not the individuals breaking into cars), but to shed light on Officer Bunch and Lam's states of mind and as evidence of the information that was available to the officers when they were making their probable cause determination. If these statements made by Shomrim members constitute inadmissible hearsay, the

6

12.) Defendants dispute this fact, citing the testimony of Mr. Rosenberg, who testified that he never heard anyone at the scene tell the police that the plaintiffs were not the individuals suspected of breaking into cars. (Defs.' 56.1 Reply Stmt. ¶ 20.)

It is undisputed that Mr. Steinmetz was summoned to the location where plaintiffs were stopped. (Defs.' 56.1 Stmt. ¶ 14; Pls.' 56.1 Stmt. ¶ 14.) The parties, however, dispute whether Mr. Steinmetz spoke to Officers Bunch and Lam prior to or after plaintiffs' arrest. Plaintiffs cite Mr. Steinmetz's deposition testimony, wherein Mr. Steinmetz testified that, to the best of his recollection, when he arrived at the scene of the arrest, plaintiffs were in handcuffs and were being placed in the police vehicle and that he did not speak to the police before plaintiffs were handcuffed. (Pls.' 56.1 Stmt. ¶ 23.) Defendants cite Officer Bunch's deposition testimony, wherein Officer Bunch testified that she spoke to Mr. Steinmetz prior to arresting the plaintiffs. (Defs.' 56.1 Reply Stmt. ¶ 23.)

Officers Bunch and Lam placed plaintiffs under arrest after Sergeant Tony Wong was called to the scene of the arrest, and Sergeant Wong approved the arrest. (Defs.' 56.1 Stmt. ¶ 16[3]; Pls.' 56.1 Stmt. ¶ 39.) The plaintiffs do not dispute that

---

statements made the Shomrim member who initially flagged down Officers Bunch and Lam would also constitute inadmissible hearsay.
[3] Plaintiffs appear to have overlooked ¶ 16 of defendants' 56.1 Statement, but it is undisputed that Officers Bunch and Lam placed plaintiffs under arrest.

Sergeant Wong recalls speaking to Officer Bunch who told him "that she had stopped someone who committed a crime" prior to approving the arrest. (Pls.' 56.1 Stmt. ¶ 39; Defs.' 56.1 Reply Stmt. ¶ 39.) Plaintiffs were charged with unauthorized use of a motor vehicle pursuant to New York Penal Law § 165.05, but the Office of the District Attorney for Kings County declined to prosecute the charges. (Pls' 56.1 Stmt. ¶¶ 40-41; Defs.' 56.1 Reply Stmt. ¶¶ 40-41.)

## LEGAL STANDARD

### I. Summary Judgment

"Summary judgment is appropriate where there is no genuine issue as to any material fact and . . . the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004) (internal citations and quotation marks omitted). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal citations and quotation marks omitted). "A fact is material when it might affect the outcome of the suit under governing law." *Id.*

(internal citations and quotation marks omitted). Moreover, an issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56[] to set forth specific facts showing that there is a genuine issue of material fact to be tried." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir. 1993).

**II. False Arrest[4] Pursuant to 42 U.S.C. § 1983**

A claim pursuant to 42 U.S.C. § 1983 ("§ 1983") for false arrest is substantially the same as a claim for false arrest under New York law. *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." *Id.* (internal citations omitted); *see also Broughton v. State,* 37 N.Y.2d 451, 456–57, 373 N.Y.S.2d 87, 335 N.E.2d 310 (N.Y. 1975) (plaintiff will prevail on a

---

[4] Plaintiffs allege claims of both false arrest and false imprisonment. "In New York, the tort of false arrest is synonymous with that of false imprisonment." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)(citation omitted). Additionally, probable cause is a complete defense to both false arrest and false imprisonment claims. *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). Consequently, the court combines the probable cause analysis for the two claims.

9

claim of false arrest under New York law if he can show that the arrest was not privileged, i.e., not based on probable cause).

Probable cause requires an officer to have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000) (internal quotation marks and citation omitted). "When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it." *Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002) (internal quotation marks and citation omitted). "Probable cause does not require absolute certainty." *Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir. 2003). Courts should look to the "totality of the circumstances" and "must be aware that probable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." *Caldarola,* 298 F.3d at 162 (citation omitted).

"[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness," *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000) (internal quotation marks and citation omitted), unless

10

the circumstances raise doubt as to the person's veracity, *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir. 1995). *See also Oliveira v. Mayer*, 23 F.3d 642, 647-48 (2d Cir. 1994) ("Information about criminal activity provided by a single complainant can establish probable cause when that information is sufficiently reliable and corroborated.") The reliability or veracity of the informant and the basis for the informant's knowledge are two important factors. *Caldarola,* 298 F.3d at 162. "[I]nformation provided by an identified bystander with no apparent motive to falsify has a peculiar likelihood of accuracy, and [the Second Circuit has] endorsed the proposition that an identified citizen informant is presumed to be reliable." *Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006) (internal quotation marks and citation omitted).

Even where a reviewing court concludes that probable cause to arrest was lacking in a given case, an officer "will still be entitled to qualified immunity . . . if he can establish that there was 'arguable probable cause' to arrest." *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (internal

quotation marks and citations omitted); *accord Walczyk v. Rio,* 496 F.3d 139, 163 (2d Cir. 2007).

## **APPLICATION**

The court finds that Police Officers Bunch and Lam had probable cause to arrest plaintiffs on September 30, 2013. Officers Bunch and Lam had the following facts available to them at the time of the arrest and immediately preceding the arrest: Officers Bunch and Lam were patrolling an area that they knew had a high rate of automobile robberies; a member of Shomrim, a neighborhood watch group that works with the New York Police Department, flagged down Officers Bunch and Lam and alerted them that "some guys are breaking into cars" while walking in a particular vicinity and that other Shomrim members were following them; upon the officers' arrival at the vicinity of Fort Hamilton Parkway and 52nd or 53rd Street, more than one Shomrim member identified plaintiffs as the individuals who were breaking into cars; Officers Bunch and Lam spoke with an eyewitness, Shomrim member Mr. Rosenberg, who told the officers that he observed plaintiffs pulling the door handles of three to five cars as he followed them from 11th Avenue and 48th Street; and another Shomrim member reported to Officers Bunch and Lam that the vehicle plaintiffs entered belonged to his cousin. The parties dispute whether Officers Bunch and Lam spoke to eyewitness Mr. Steinmetz prior to or after arresting plaintiffs.

Mr. Steinmetz was the eyewitness who initially notified the Shomrim of two individuals pacing around and entering a vehicle at New Utrecht Avenue and 48th Street. This particular dispute of fact, however, is not material, because, as a matter of law, Officers Bunch and Lam had probable cause to arrest plaintiffs based on the totality of the circumstances, even prior to speaking with Mr. Steinmetz.

It is well-established that law enforcement officials have probable cause to arrest if they receive reliable information from "some person, normally the putative victim or eyewitness." *Martinez,* 202 F.3d at 634. Here, the parties do not dispute that multiple Shomrim members identified plaintiffs as individuals who were breaking into cars, and that statements by bystander witnesses are considered "presumptively reliable." *Oliveira*, 23 F.3d at 647. Additionally, it was proper for Officers Bunch and Lam to give weight to statements by members of the Shomrim, as they regularly patrol the neighborhood and have a working relationship with the New York Police Department. *See Panetta*, 460 F.3d at 397 (finding it appropriate to give weight to statement of a nonpolice peace officer who indicated that he had expertise relevant to the situation); *Riccuiti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)(noting that fact that correctional officer "identified himself a law enforcement officer" increased his credibility for

13

purposes of determining probable cause for arrest). Viewing the facts in the light most favorable to plaintiffs, plaintiffs claim that an unspecified number of Shomrim members indicated that the plaintiffs were not the individuals breaking into cars. Nonetheless, the information provided by other Shomrim members constitutes "reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief" that plaintiffs were attempting to use a vehicle without authorization. *Martinez,* 202 F.3d at 634. Prior to the plaintiffs' arrest, a Shomrim member reported to Officers Bunch and Lam that the vehicle which Mr. Steinmetz observed the plaintiffs enter belonged to his cousin, and Mr. Rosenberg reported to the officers that, after confirming with Mr. Steinmetz that the plaintiffs were the individuals Mr. Steinmetz first observed, Mr. Rosenberg then followed behind the plaintiffs for four to five blocks during which time he observed the plaintiffs attempt to open the doors of three to five cars.

The facts here are readily distinguishable from *Oliveira v. Mayer*, 23 F.3d 642 (2d Cir. 1994), to which plaintiffs cite in support of their opposition to defendants' motion for summary judgment. (Pls.' Mem. of Law in Opp. to Defs.' Mot. for Summ. J. ("Pls.' Opp.") at 6, ECF No. 47.) In *Oliveira*, police officers arrested the plaintiffs based solely on a report that the plaintiffs were "three dark-skinned males[]

handling an expensive video camera while driving in a dilapidated station wagon through an affluent area of North Stamford, Connecticut." 23 F.3d at 644. The Second Circuit held that an observation that "one occupant of a vehicle that appeared to be of low value with what appeared to be a somewhat expensive item of personal property" does not "indicate or even reasonably suggest that a crime had taken place." *Id*. at 647-48. Here, Mr. Rosenberg observed plaintiffs attempting to open the doors of three to five cars as they walked from 48th Street and 11th Avenue to the vicinity of Fort Hamilton Parkway and 52nd or 53rd Streets, which, coupled with the report that Mr. Steinmetz observed two individuals pacing around and entering a vehicle belonging to someone other than the plaintiffs, establishes probable cause to believe that plaintiffs were attempting to use or take a vehicle unlawfully.

The court finds that Officers Bunch and Lam had probable cause, or at the very least arguable probable cause, to arrest plaintiffs on September 30, 2013. Consequently, the court finds no deprivation of a constitutional right and dismisses plaintiffs' claim of false arrest and false imprisonment in violation of 42 U.S.C. § 1983. Given the court's finding that plaintiffs' arrest was lawful and plaintiffs have withdrawn their allegations that Officers Bunch and Lam used any excessive force in effectuating the arrest,

plaintiffs' state law assault and battery claims are also dismissed. *See, e.g.*, *Cornett v. Brown*, 04-CV-0754, 2007 WL 2743485, at *10 (E.D.N.Y. Sept. 17, 2007).

## CONCLUSION

For the foregoing reasons, the court grants defendants' motion for summary judgment in its entirety and plaintiffs' claims of false arrest and false imprisonment in violation of 42 U.S.C. § 1983 and state law claims of assault and battery are hereby dismissed. The Clerk of the Court is directed to enter judgment accordingly and close this case.

**SO ORDERED.**

Dated:   January 7, 2016
         Brooklyn, New York

                                    _____/s/_____
                                    Kiyo A. Matsumoto
                                    United States District Judge